# EXHIBIT 18

## Affidavit of Richard D. Bush

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID S.L. PARKS<br>　　Plaintiff, | :<br>:<br>: |
| v. | 3:09-CV-00604-VLB |
| THERESA LANTZ, et al.<br>　　Defendants. | :<br>: JUNE 3, 2014 |

### AFFIDAVIT OF RICHARD D. BUSH

I, Richard D. Bush, being duly sworn, depose and says:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am a Health Services Administrator employed by the University of Connecticut Correctional Managed Health Care. In this capacity I supervise the operational and administrative aspects of medical services to inmates under the custody of the Connecticut Department of Correction ("DOC") who are housed at my assigned facility. I have held this position since March 2003.

3. Correctional Managed Health Care is the entity that provides medical services to inmates via a contract with the DOC.

4. The medical records of Connecticut inmates are maintained by Correctional Managed Healthcare and are the property of DOC. I have reviewed the plaintiff's medical records and provide the following factual statements based upon his records. The records referenced in this affidavit are true and accurate copies of the plaintiff's medical records.

5. Dr. Lewis, a DOC psychiatrist, indicates in her note on 4/6/2006 that the plaintiff was not a candidate for Interferon, was "non-compliant with meds," and was "labile, verbally assaultive, and paranoid." The plaintiff also demonstrated "lack of insight into [his] need for treatment and maintain[ed] a threatening posture with staff." The plaintiff "exhibit[ed] severe personality pathology as well as serious mental illness . . . and exhibit[ed] signs of a psychotic [disorder]. In [the psychiatrist's] opinion, [the plaintiff] require]d] Mental Health Housing to optimize his condition." The note indicates that "once that condition is stabilized (if it is stabilized), [then] formal assessment for Interferon could be conducted." The psychiatrist referred the plaintiff to Mental Health Housing. See Exhibit 19, p. 1.

6. The plaintiff was cleared for a transfer on 4/16/2006 and transferred from MWCI to Garner Correctional Institution ("Garner") on 4/19/2006. See Exhibit 19, p. 2.

7. On 8/11/2006, the medical note indicates that Mental Health notified a DOC nurse that the plaintiff would transfer to MWCI that afternoon. See Exhibit 19, p. 3.

8. The plaintiff transferred from Garner to MWCI on 8/11/2006. See Exhibit 9, RT60.

9. Licensed Clinical Social Worker (LCSW) Sara Cyr indicates in her note on 8/24/2006 that the plaintiff's "mood [was] labile with increasing irritability" and demonstrated "speech pressured with paranoid content and threatening posture and facial expressions directed at DOC." The note also

indicates that the plaintiff was "preoccupied with DOC['s] 'conspiracy' to prevent litigation initiated by him." LCSW Cyr observed that the plaintiff "currently evidences signs of decompensation with mood lability/irritability and potential risk to self/others" and referred the plaintiff to mental health level 4 housing because of his "unstable mental status and risk to self/others." See Exhibit 19, pp. 4-5.

10. The plaintiff transferred from MWCI to Garner on 8/25/2006. See Exhibit 9, RT60.

11. LCSW Hashim indicates in his note on 10/3/2006 that the plaintiff "has functioned on a stable level for the majority of his stay [at Garner]." The note indicates that the plaintiff's "thought process [was] clear, organized, goal-oriented and reality based" and there was "no overt evidence of psychosis." See Exhibit 19, p. 6.

12. The plaintiff's mental health level was lowered to a 3 on 10/10/2006, see Exhibit 19, p. 11, Plaintiff's RT74, and was cleared by Mental Health to transfer from Garner to MWCI on 10/16/2006, see Exhibit 20, p. 14, Transfer History Record, 10/16/2006.

13. The plaintiff's medical chart indicates that the plaintiff presented symptoms consistent with rhabdomyolysis on 6/26/2007. Specifically, the UA dip stick showed traces of blood in his urine. This condition required the plaintiff to have fluids injected through intravenous ("IV"). Because Garner CI did not have an infirmary capable of IV treatment, the plaintiff transferred to

Corrigan-Radgowski Correctional Institution ("Corrigan") on 6/26/2007. See Exhibit 19, p. 7.

14. The plaintiff's medical chart indicates that the plaintiff began IV treatment on 6/26/2007. Dr. Chouhan discontinued the plaintiff's IV treatment on 6/27/2007 and ordered that the plaintiff may return to general population at his sending facility. See Exhibit 19, p. 8.

15. The plaintiff transferred from Corrigan to Garner on 6/28/2007. See Exhibit 9, RT60.

16. Dr. Bogdanoff, PsyD indicates in his note on 8/20/2008 that the plaintiff was reviewed by the mental health team at Garner. The team determined that the plaintiff was appropriate for general population. The note indicates that the plaintiff had "no prominent psych issues." He further notes that "at [that] point in time [had] needs . . . for medical attention over psychiatric issues" and had "[n]o need for [mental health] housing." The mental health team approved the plaintiff for transfer. See Exhibit 19, p. 9.

17. The plaintiff transferred from Garner to MWCI on 8/21/2008. See Exhibit 9, RT60.

18. The plaintiff transferred from Osborn to UCONN John Dempsey Hospital on 3/13/2013 for medical treatment. See Exhibit 9, RT60.

19. The plaintiff transferred from UCONN John Dempsey Hospital to Osborn on 3/14/2013. See Exhibit 9, RT60.

## VERIFICATION

I hereby swear that the foregoing is true and accurate to the best of my knowledge and belief.

_Richard D. Bush_

Subscribed and sworn to before me this __5th__ day of June, 2014.

_Valerie Bernardoni Fazzino_
Notary/ Commissioner of the Court

VALERIE BERNARDONI FAZZINO
Notary Public
My Commission Expires __8/31/14__

